UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

YORK COUNTY,                               )
                                           )
       *Plaintiff*          )
                                           )
*v.*                                       )     **Civil No. 09-577-P-S**
                                           )
GREAT AMERICAN INSURANCE                   )
COMPANY OF NEW YORK,                       )
                                           )
       *Defendant*         )


***RECOMMENDED DECISION ON MOTION FOR JUDGMENT ON THE PLEADINGS***

The defendant, Great American Insurance Company of New York, seeks judgment on the pleadings with respect to all three counts of the plaintiff's third amended complaint. Because that complaint arises from the same nucleus of operative facts as previous litigation between these same parties, I recommend that the motion be granted by application of the claim preclusion doctrine.

**I. Applicable Legal Standard**

The motion invokes Fed. R. Civ. P. 12(c). Defendant's Motion for Judgment on the Pleadings ("Motion") (Docket No. 14) at 1. "A motion for judgment on the pleadings is treated much like a Rule 12(b)(6) motion to dismiss." *Pérez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008). "Because a Rule 12(c) motion calls for an assessment of the merits of the case at an embryonic stage, the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom." *Id*. (citations and internal punctuation omitted). A court "ought not, however, credit bald assertions,

1

unsupportable conclusions, periphrastic circumlocutions, and the like." *Aponte-Torres v. University of P.R.*, 445 F.3d 50, 55 (1st Cir. 2006) (in context of Rule 12(c) motion).

"Under *Bell Atlantic v. Twombly,* 550 U.S. 544, [555-56], 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007), to survive a Rule 12(b)(6) motion (and, by extension, a Rule 12(c) motion) a complaint must contain factual allegations that raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." *Id*. (citation and internal punctuation omitted); *see also, e.g., Cook v. Gates*, 528 F.3d 42, 48 (1st Cir. 2008) ("To survive a motion to dismiss, a complaint must allege a plausible entitlement to relief") (citations and internal quotation marks omitted).

"In reviewing a motion under Rule 12(c), as in reviewing a Rule 12(b)(6) motion, [a court] may consider documents the authenticity of which are not disputed by the parties; documents central to plaintiffs' claim; and documents sufficiently referred to in the complaint." *Curran v. Cousins*, 509 F.3d 36, 44 (1st Cir. 2007) (citation and internal punctuation omitted). "This is true even when the documents are incorporated into the movant's pleadings." *Id*. (footnote omitted); *Beddall v. State St. Bank & Trust Co.,* 137 F.3d 12, 17 (1st Cir. 1998) ("When, as now, a complaint's factual allegations are expressly linked to – and admittedly dependent upon – a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6).").

## II. Factual Background

The operative version of the complaint includes the following relevant factual allegations.

The defendant is a foreign corporation transacting business as a licensed insurer in the State of Maine. Third Amended Complaint ("Complaint") (Docket No. 12) ¶ 3. The plaintiff

and a corporate predecessor of the defendant were parties to an insurance agreement covering the period from November 1, 1996, to January 1, 1998. *Id.* ¶ 7. York County was the defendant in a class action lawsuit for which a defense group was formed of all potential insurers who provided relevant liability insurance for the county during the times implicated in the lawsuit. *Id.* ¶¶ 8-9. The defendant's corporate predecessor issued a reservation of rights letter to the county and participated in the defense of the class action lawsuit. *Id.* ¶ 13. It agreed to pay 25% of defense costs. *Id.* ¶ 15.

Mediation sessions with the plaintiff class were held on September 20, 2004, and September 29, 2004. *Id.* ¶¶ 21, 24. Between the two mediations the defendant and the county disagreed on the question of whether the applicable policy's deductible limit had to be met by each plaintiff or only by the entire class before the defendant would make payment. *Id.* ¶¶ 22-23. At the second mediation the defendant's corporate predecessor offered to contribute $650,000 towards settlement. *Id.* ¶ 25. Its representative did not communicate any restrictions on this tendered contribution or that it would seek reimbursement based on the deductible provision of the policy. *Id.* The defense group made an offer of settlement based on the representation that the defendant's corporate predecessor would contribute $650,000. *Id.* ¶ 27,

In a telephone call on October 29, 2004, the attorney for the county tried to persuade the attorney for the defendant to increase its contribution to the settlement. *Id.* ¶¶ 30-31. The deductible issue was not raised during this call. *Id.* ¶ 32. Following this call, the contribution of the defendant's corporate predecessor to the settlement was increased to $750,000. *Id.* ¶ 33. The class accepted a $3.3 million settlement fund. *Id.* ¶ 35. The defendant's corporate predecessor sent a check for $750,000 on or around February 1, 2005. *Id.* ¶ 39. The court gave its final approval to the settlement on September 8, 2005. *Id.* ¶ 40.

York County contributed $50,000 to the settlement fund. *Id*. ¶ 46. The defendant's corporate predecessor understood that the county was experiencing financial difficulties. *Id*. ¶ 45. At no time did the defendant's corporate predecessor indicate that it planned to recover its contribution to the settlement fund from the county. *Id*. ¶ 49. The county would not have settled the lawsuit if it had known that the defendant's corporate predecessor intended to seek reimbursement of its $750,000 contribution. *Id*. ¶ 51.

On November 17, 2006, the defendant's corporate predecessor sued York County, claiming that the entire $750,000 that it had contributed to the settlement was merely an advance of deductible amounts owed by the county under the terms of the policy. *Id*. ¶ 52.

### III. Discussion

The third amended complaint is cast in three counts. The first alleges that the defendant engaged in unfair claims settlement practices in violation of 24-A M.R.S.A. § 2436-A. Complaint ¶¶ 61-64. Count II alleges breach of contract. *Id*. ¶¶ 65-70. Count III is based on the doctrine of promissory estoppel. *Id*. ¶¶ 71-76. The defendant's motion addresses all three on the same basis.

The defendant relies on the doctrine of claim preclusion. Motion at 1.

> Claim preclusion, especially in federal courts, has expanded in recent decades from its long-time use to prevent re-litigation of the same "cause of action" to the barring of claims that were not brought earlier but grew out of the same nucleus of operative facts and "should have been brought" in the earlier action.

*Aristud-González v. Government Development Bank for Puerto Rico (GDB)*, 501 F.3d 24, 27 (1st Cir. 2007) (citation omitted).

> To bring claim preclusion into play, a cause of action need not be a clone of the earlier cause of action. "Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."

4

> *Allen v. McCurry,* 449 U.S. 90, 94 . . . (1980). We have adopted a transactional approach to determine whether causes of action are sufficiently related to support a res judicata defense. "Under this approach, a cause of action is defined as a set of facts which can be characterized as a single transaction or series of related transactions. This boils down to whether the causes of action arise out of a common nucleus of operative facts. In mounting this inquiry, we routinely ask whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations.

*Massachusetts Sch. of Law at Andover, Inc. v. American Bar Ass'n*, 142 F.3d 26, 38 (1st Cir. 1998) (some citations and internal quotation marks omitted).

> In most situations involving federal claims, it is now enough to trigger claim preclusion that the plaintiff's second claim grows out of the same transaction or set of related transactions as the previously decided claim. The implicit rationale is that for the sake of efficiency, all such claims should be brought together, if this is possible. In short, the res judicata doctrine functions not only in its traditional role of preventing repeat claims, but has become a compulsory joinder requirement for closely related claims.

*AVX Corp. v. Cabot Corp.*, 424 F.3d 28, 31 (1st Cir. 2005) (citations omitted). *See also* Fed. R. Civ. P. 13(a), entitled "Compulsory Counterclaim": "A pleading must state as a counterclaim any claim that – at the time of service – the pleader has against an opposing party if the claim . . . arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and . . . does not require adding another party over whom the court cannot acquire jurisdiction."

The plaintiff quotes a single sentence from the First Circuit's decision in *In re Iannochino*, 242 F.3d 36 (1st Cir. 2001), Opposition at 3, to support its assertion that, as a "general principle", "[t]he failure to interpose a counterclaim does not necessarily act as a bar to later actions." Even if this objectively correct statement by the First Circuit could continue to bear the weight that the plaintiff seeks to impose upon it in light of the First Circuit's more recent

5

pronouncements in *AVX* and *González* quoted above, it would not serve to bar the defendant's argument.

One of the two "exceptions" noted by the *Iannochino* court is that "[u]nder ordinary federal rules of civil procedure, if a counterclaim arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction, the counterclaim is compulsory and must be raised" in the earlier action. 242 F.3d at 41-42 (citation and internal quotation marks omitted). The defendant argues here that the claims asserted by the plaintiff were compulsory counterclaims in the earlier action, precisely the "exception" contemplated in *Iannochino*.

The relevant allegations in the claim asserted by the defendant in the earlier action, *American Nat'l Fire Ins. Co. v. York County*, Civil No. 06-200-P-S,[1] were the following:

- The insurance policy at issue included on its declaration page the statement that coverage was subject to "Deductible: $5,000 Per Claim."

- The premium was substantially less than it would have been for "first-dollar coverage."

- Settlement of the class-action suit was negotiated for $3,3000,000 with contributions from multiple insurers and entities.

- American National paid $750,000 toward the settlement, subject to a reservation of rights.

- Prorated over the 311 claimants, American National's payment was less than $5,000 per claim.

---

[1] American National Fire Insurance Company is a corporate predecessor of Great American Insurance Company of New York. Motion to Substitute Party (Docket No. 7); Complaint ¶ 2.

- Therefore, the entire amount paid by American National was within the policy deductible and York County must reimburse American National for that amount.

Complaint, *American Nat'l Fire Ins. Co. v. York County*, Civil No. 06-200-P-S (Docket No. 1), ¶¶ 4, 8, 9, 14, 15, 17, 18.

In the current action, York County alleges that American National, or its successor, violated 24-A M.R.S.A. § 2436 by bringing the 06-200 lawsuit, breached its contract with York County by bringing the lawsuit, and induced York County to rely on its contribution of $750,000 to the settlement in a manner that estopped it from claiming reimbursement as it did in the 06-200 lawsuit. Complaint ¶¶ 61-76. The defendant contends that each of these claims was a compulsory counterclaim in the 06-200 action. Motion at 6-8. It also asserts that the fact that the plaintiff's claims arise from the same nucleus of operative facts as did the claims in the 06-200 action is sufficient to require dismissal. *Id*. at 4-6.

York County first argues that its current claims "had not matured" at the time American National served the complaint in the 06-200 action and, thus, were not compulsory counterclaims in the 06-200 action, despite the obvious fact that the claims arose out of the transaction or occurrence that was the subject matter of American National's claim in that case and would not have required the adding of another party, in the terms of Rule 13(a). Opposition at 4. It is true that Rule 13(a) requires that a counterclaim be "mature" at the time of the service of the complaint in order for it to be compulsory, *see, e.g., Tapalian v. Town of Seekonk*, 188 F.Supp.2d 136, 139 (D. Mass. 2002), but the counterclaims at issue here were neither "acquired by the . . . defendant after [it] ha[d] answered" the complaint in the first action, *id*., nor did York County need to wait to learn during discovery in that action about "Curtin's course of dealing during a pre-Nilsen class action settlement and [the insurer's] internal determinations during the Nilsen

7

settlement negotiations," Opposition at 5, before it should have known that it could assert these counterclaims. York County does not suggest how this information changed "the basic character of the claims" at issue, *Carteret Savings & Loan Ass'n v. Jackson*, 812 F.2d 36, 39 (1st Cir. 1987); information that merely strengthens or weakens a party's position on the merits, like that described by York County here, does not demonstrate that the claim was not mature before the discovery was undertaken.

This information learned by York County during discovery is described in some detail at page 6 of the Opposition, but it simply does not serve to create or make apparent the claims that York County asserts in this action. *See id*. at 38-39. In addition, York County asserted a defense of estoppel in 06-200 that is too similar to Count III of its current complaint to allow it to assert that such a claim had not matured as of the time it filed that answer. Answer and Affirmative Defenses, *American Nat'l Fire Ins. Co. v. York County* (Docket No. 6) at 3.

York County next asserts that "[e]ven if . . . claim preclusion applies, its requirements are not satisfied[,]" Opposition at 8, because there is insufficient "identicality" between the causes of action asserted here and those earlier asserted in 06-200. It argues again that it did not have the necessary information "during the pendency of the earlier action . . . until discovery was well underway" in order to assert the present claims as counterclaims in that action. *Id*. at 9-10. I have already rejected this argument, and recasting it as an assertion that it "would not have been reasonable for [the insurer] to expect York County to bring these claims in response to its Complaint[,]" *id*., makes no difference. The claims asserted here by York County clearly arise from the same nucleus of operative facts as did American National's claims in the 06-200 action. *See generally Porn v. National Grange Mut. Ins. Co.*, 93 F.3d 31, 32, 34-37 (1st Cir. 1996).

Finally, York County contends that this court "ought to conclude that York County's claims fall within the exception to the applicability of claim preclusion for cases involving 'unusual hardship.'" Opposition at 10. This is so, it asserts, because American National's "deceptions and misleading conduct justify allowing the County to bring its claims." *Id*. But, York County's view of a "hardship" exception to the claim preclusion doctrine – that otherwise precluded claims may proceed if they have merit – would render the doctrine an empty shell. In the first of the two cases cited by York County in support of its brief discussion of this issue, *Rose v. Town of Harwich*, 778 F.2d 77 (1st Cir. 1985), the First Circuit noted:

> [I]f courts relaxed the principles of claim preclusion every time it appeared that a litigant had a strong claim 'on the equities,' the doctrine would fail to serve its purposes of promoting judicial economy and repose. In some individual instances a fairer result might be achieved, but more often the litigation of stale claims and the resulting uncertainty would mean injustice or hardship.

*Id*. at 82. The court went on to find that the facts in that case, where a town took the property of the plaintiff, a merchant seaman, without paying for it, and after giving possibly inadequate notice, did not present a case "in which the plaintiff has clearly and convincingly shown that the policies favoring preclusion of a second action are overcome for an extraordinary reason." *Id*. (citation and internal punctuation omitted).

The same is true in this case. Contrary to York County's presentation, Opposition at 10, the court in *Goya de Puerto Rico, Inc. v. Muñoz*, 95 F.Supp.2d 61 (D. P. R. 2000), did *not* "examin[e the] merits of [the] plaintiff's constitutional challenge to determine whether application of res judicata impose[d an] undue hardship." That opinion offers nothing more than a recitation of the holding in *Town of Harwich*. *Id*. at 66. While the insurer's conduct in this case was certainly unreasonable, *American Nat'l Fire Ins. Co. v. York County*, 575 F.3d 112, 119

9

(1st Cir. 2009), York County has not persuaded me that some extraordinary reason should excuse its failure to assert its available claims in the 06-200 action.

## IV. Conclusion

For the foregoing reasons, I recommend that the defendants' motion to dismiss be **GRANTED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 30th day of May, 2010.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge